IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PATRICIA HOLMES, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CITY OF WILMINGTON, WILMINGTON) <br> POLICE DETECTIVE KIMBERLY ) <br> PFAFF, WILMINGTON POLICE ) <br> DETECTIVE RANDY HOWELL AND ) <br> POLICE MEMBERS JOHN DOE ) <br> NUMBERS ONE THROUGH TEN, ) <br> BADGE NUMBERS UNKNOWN, ) <br> ) <br> Defendants. ) | Civ. No. 13-842-SLR |

**MEMORANDUM**

At Wilmington this 4th day of February, 2015, having reviewed defendants' motion to dismiss and the papers submitted in connection, the court will grant in part and deny in part said motion, for the reasons that follow:

1. **Introduction.** On May 13, 2013, Medford Holmes ("Holmes") filed a complaint pursuant to 42 U.S.C. §§ 1983, 1985 and 1988, the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, the Delaware Constitution and under the Delaware State law. (D.I. 1) In response, Kimberly Pfaff ("Detective Pfaff"),[1] defendant Randy Nowell ("Detective Nowell"),[2] defendant City of Wilmington

---

[1] Detective Pfaff is a detective with the Wilmington Police Department. (D.I. 1 at ¶ 6) She is sued in her individual and official capacities.

[2] Detective Nowell is a detective with the Wilmington Police Department. (D.I. 1 at ¶ 7) He is sued in his individual and official capacities.

("the City"), and John Doe Number One through Ten ("the Doe defendants") filed a motion to dismiss. (D.I. 7)

2. Upon discovering that Holmes was no longer living, the court issued an order to show cause why the complaint should not be dismissed for failure to substitute a party, pursuant to Fed. R. Civ. P. 25. (D.I. 12) The motion to dismiss was denied without prejudice to renew. On March 6, 2014, a motion was filed to substitute Patricia Holmes, personal representative of the estate of Medford Tyree Holmes,[3] for Medford Holmes as plaintiff in this case.[4] (D.I. 13) On March 28, 2014, the order to substitute was granted. (D.I. 15) Subsequently, defendants filed a motion to dismiss,[5] which is fully briefed and before the court. (D.I. 17, 18, 19, 20)

3. **Background.**[6] On April 27, 2011 at approximately 3:30 p.m., Antonio Smith ("Smith") was outside his residence located at 2806 North Jefferson Street, Wilmington Delaware. (D.I. 1) Smith was conversing with a friend, Abdullah Talib-Din ("Talib-Din"). A man ("the shooter") approached Smith and Talib-Din from the direction of 29th Street and fired a .40 caliber handgun, first, at Smith and, then, at Talib-Din. Smith was fatally

---

[3]On March 4, 2014, the Register of Wills for New Castle County, Delaware certified Patricia Holmes as the personal representative of the estate of Medford Tyree Holmes. (D.I. 13 at Ex. C)

[4]The attached suggestion of death reflects that Medford Holmes died on August 13, 2013. (D.I. 13 at Ex. B)

[5]Defendants' first motion to dismiss was dismissed without prejudice to renew as part of the order to show cause dated February 7, 2014. (D.I. 12)

[6]The following facts are set forth in plaintiff's complaint and are taken as true, as they must be when considering a motion to dismiss. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

2

wounded. Although shot multiple times, Talib-Din was transported to a hospital and survived.

4. On the evening of April 27th, Detective Pfaff and Detective Nowell (collectively, "detectives") interviewed several witnesses. One of those interviewed ("Witness 1"), suffers from Expressive Aphasia, a condition caused by head trauma attributable to a prior automobile accident. As a result of this condition, Witness 1 is unable to write and has severely limited verbal communication skills. Witness 1 expresses himself through physical movements, including hand gestures, head gestures and facial expressions, as well as through noises.

5. According to Detective Nowell,[7] Witness 1 indicated that he observed the shooting from inside his home, which is located fifty yards away from the corner. There is an evergreen tree and several houses in between the location of the shooting and Witness 1's house. After the shooting, Witness 1 went to the front of his house where he saw the shooter for approximately 30 seconds (from 20 feet away), as the shooter fled around the corner.

6. Although Detective Nowell claimed that Witness 1 had an unobstructed view of the scene, Witness 1 did not provide any descriptive information of the shooter. Living at home with Witness 1 were his parents, ("Witness 2") and ("Witness 3"). Witness 2 gave defendant Nowell a description of the shooter. Two weeks later, on May 11, 2011, the detectives developed Holmes as a suspect.

---

[7]Detective Nowell testified at the hearing conducted by the Delaware Superior Court ("state court") on Holmes' motion to suppress. *State v. Holmes*, 2012 WL 4086169 (Del. Super. August 23, 2012) (unreported). The complaint includes direct references and quotes from the state court's decision.

3

7. On May 12, 2011, the detectives created a photo lineup that included Holmes (in the third position) and returned to present the array to the three witnesses. The detectives took each witness, one at a time, into a separate room to review the photo line-up. Detective Pfaff was equipped with an audio recorder to record the interviews.

8. After speaking with Witness 2, Detective Pfaff showed the photo array to Witness 1.[8] The detectives claimed that Witness 1 became visibly upset when viewing the array, however, Witness 1 did not identify Holmes as the shooter. (D.I. 1 at ¶¶ 26-27)

9. The detectives segregated and showed Witness 3 the photo lineup. Witness 3 was unable to identify anyone in the array. Next, the detectives showed the array to Witness 2, who identified the individual in position 4 (not Holmes) as the shooter. (*Id.* at ¶¶ 28-29)

10. Witness 3 ultimately identified the person in position 2 (not Holmes) as the shooter. In response, Detective Pfaff stated: "[Y]eah, well no, that's not the one that we're looking at, no but I appreciate . . . . " (*Id.* at ¶ 30; Holmes, at *3-4) Despite the fact that Witnesses 2 and 3 failed to identify Holmes, the detectives, along with Witnesses 2 and 3, encouraged Witness 1 to identify the shooter. (D.I. I at ¶ 31)

11. An unidentified male then entered the house and conversed with Detective Pfaff, leaving Detective Nowell alone with the witnesses. With the recorder out of

---

[8]The state court noted that "[i]t strains credulity to believe that, in less than a second, Detective Pfaff ceased speaking with Witness 2, maneuvered Witness 1 into a separate room and presented Witness 1, with the photographic array." (D.I. 1 at ¶ 25, quoting *State v. Holmes*, 2012 WL 4086169, at *fn.3)

4

range, Detective Nowell held the photo array up to his chest. Witnesses 2 and 3 were standing behind Detective Nowell, unable to see the photo array.

12. Detective Nowell claims that Witness 1 walked up to the array and pointed to Holmes. Despite this positive identification of Holmes as the shooter, Detective Nowell did not have Witness 1 sign the photographic lineup because of "his physical limitations." (D.I. 1 at ¶ 37)

13. On May 13, 2011, Holmes was arrested and charged with murder first degree, attempted murder first degree, two counts of possession of a firearm during the commission of a felony, and possession of a firearm by a person prohibited. *See State v. Holmes*, 2012 WL 4086169. Holmes maintained his innocence and filed, inter alia, a motion to suppress Witness 1's out-of-court identification of Holmes as the shooter. Holmes argued that the photographic lineup shown by Detectives Pfaff and Nowell was unduly suggestive and that, under the totality of the circumstances, the identification was unreliable. *Id.* at *1.

14. An evidentiary hearing was conducted, with Detectives Pfaff and Nowell testifying. While the motion to suppress ("suppression decision") was denied, the court observed that the presentation of the photographic array to Witness 1, in the presence of or close proximity to, the other witnesses was impermissibly suggestive. *Id.* at *10.

15. Holmes "always maintained his innocence" and proceeded to trial. (D.I. 1 at ¶ 1) The prosecution presented no physical evidence tying Homes to the crime. The prosecution relied entirely upon identifications made by Talib-Din and Witness 1 (who did identify Holmes at trial). Talib-Din originally told detectives that he did not recognize the shooter, but later identified another individual as the shooter. (*Id.* at ¶ 2) After

5

detectives told Talib-Din that he would be prosecuted as a felon in possession for the firearm he was carrying at the time he was shot, Talib-Din struck a deal and identified Holmes from a photo lineup of six individuals that the detectives had prepared.

16. The jury was unable to reach a verdict on the charges. While the prosecution was preparing to retry the case, Talib-Din recanted his identification of Holmes as the shooter. "With nothing left, the State dropped all charges" and Holmes was released. (*Id.*)

17. Subsequently, this action was instituted based on the allegations that defendants violated Holmes' right to be free from: unreasonable searches and seizures; excessive force; false arrest; and false imprisonment. Plaintiff alleges that defendants: maliciously prosecuted and verbally abused Holmes; deprived him of due process and equal protection under the law; and violated Holmes' right "to be secure in ones' person and property." (D.I. 1 at ¶¶ 38-40) Plaintiff claims that all the defendants acted in concert, and as part of a conspiracy, to deprive Holmes of his rights under the First, Fourth, Six and Fourteenth Amendments, as well as 42 U.S.C. §§ 1983 and 1985. (*Id.* at ¶ 43)

18. Plaintiff asserts that the City has encouraged, tolerated, ratified, and has been deliberately indifferent to, certain patterns, practices and customs of police officers related to: (1) the abuse of police powers; (2) following constitutional policies and procedures regarding the use of photographic lineups; (3) maintaining proper police reports, including the identity of police eyewitness information; and (4) the failure of police officers to prevent, deter, report or take action against the type of unlawful conduct alleged herein. (*Id.* at ¶ 41) Plaintiff further alleges, inter alia, that the City

failed to train, supervise, investigate and discipline police officers, resulting in the violation of Holmes' rights. (*Id.* at ¶ 42)

19. Plaintiff also contends that defendants' conduct constitutes the following state law claims: (1) assault and battery; (2) false imprisonment; (3) intentional infliction of emotional distress; (4) interference with State constitutional rights; (5) negligence; (6) gross negligence; and (7) negligent hiring, training, retention, and supervision.

20. **Standard of review.** A motion filed under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint's factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir.1993). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 545 (internal quotation marks omitted) (interpreting Fed. R. Civ. P. 8(a)). Consistent with the Supreme Court's rulings in *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Third Circuit requires a two-part analysis when reviewing a Rule 12(b)(6) motion. *Edwards v. A.H. Cornell & Son, Inc.*, 610 F.3d 217, 219 (3d Cir. 2010); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

21. First, a court should separate the factual and legal elements of a claim, accepting the facts and disregarding the legal conclusions. *Fowler*, 578 F.3d. at 210–11. Second, a court should determine whether the remaining well-pled facts sufficiently show that the plaintiff "has a 'plausible claim for relief.' " *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679). As part of the analysis, a court must accept all well-pleaded

7

factual allegations in the complaint as true, and view them in the light most favorable to the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002); *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). In this regard, a court may consider the pleadings, public record, orders, exhibits attached to the complaint, and documents incorporated into the complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384–85 n.2 (3d Cir. 1994).

22. The court's determination is not whether the non-moving party "will ultimately prevail" but whether that party is "entitled to offer evidence to support the claims." *United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 302 (3d Cir. 2011). This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556). The court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663–64.

23. **Discussion.**[9] Defendants have moved to dismiss the allegations, on various grounds, including failure to state any facts to support the claims. In response,

---

[9]Consistent with plaintiff's request, the following federal claims are dismissed without prejudice to renew: (1) equal protection; (2) verbal abuse; and (3) conspiracy. (D.I. 19 at n.1 & n. 3) Without objection by the plaintiff, the court will also dismiss the following: (1) all state law claims against the City; and (2) state law claims against the individual defendants for intentional infliction of emotional distress and for simple negligence. (*Id.*)

8

plaintiff opposes the arguments and provides additional information in support of some claims. Plaintiff also seeks the opportunity to amend the complaint to rectify any deficiencies and notes that "[w]hen the evidentiary record is developed during discovery, there will be no question as to the validity of plaintiff's claims." (D.I. 19 at n. 5).

24. **Excessive force.** Defendants contend that the excessive force claim fails because plaintiff has not alleged any specific facts to support the allegations. (D.I. 18) Plaintiff explains that the excessive force claim is based on the fact that Holmes was incarcerated for two years as the result of being arrested and, therefore, was touched in violation of the Fourth Amendment. (D.I. 19)

25. Excessive force claims arising in the context of an arrest or investigatory stop of a free citizen are most properly characterized as one invoking the protections of the Fourth Amendment and a defendant's conduct must be analyzed under an objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 394 (1989); *Curley v. Klem*, 499 F.3d 199, 206 (3d Cir.2007). To allege a § 1983 claim for the use of excessive force, a plaintiff must show that a "seizure" occurred, and that said seizure was unreasonable. *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004). A "seizure" occurs for Fourth Amendment purposes when a government official has, "by means of physical force or show of authority, . . . in some way restrained [the person's] liberty." *Terry v. Ohio*, 392 U.S. 1, 19 n. 16 (1968); *Berg v. County of Allegheny*, 219 F.3d 261, 269 (3d Cir.2000).

26. "[I]n a case where police effect an arrest without probable cause or a

9

detention without reasonable suspicion, but use no more force than would have been reasonably necessary if the arrest or the detention were warranted, the plaintiff has a claim for unlawful arrest or detention but not an additional claim for excessive force." *Cortez v. McCauley*, 478 F.3d 1108, 1126 (10th Cir. 2007). A claim for excessive force, which is merely a concomitant to a contested arrest but is not based on some actual allegation of unreasonable force, must be dismissed. *Van Brackle v. Pa Parole Bd.*, 1996 WL 544229 at *3 (E.D. Pa. Sept. 26, 1996).

27. Although asserting that the act of arresting and imprisoning Holmes for crimes that he did not commit constitutes excessive force, plaintiff has failed to allege any facts suggesting that defendants used unreasonable force on Holmes, at any time. Despite plaintiff's reliance on the Third Circuit's model jury instructions on the topic of "seizure," plaintiff has not presented any authority to demonstrate that a seizure, alone, amounts to excessive force. Likewise, the court cannot locate any authority to support an excessive force claim based on facts similar to those at bar.

28. To the extent plaintiff avers that the force applied was excessive because there was insufficient probable cause to arrest Holmes due to defendants' misconduct, the Third Circuit has rejected attempts to "bootstrap excessive force claims and probable cause challenges." *Snell v. City of York*, 564 F.3d 659, 672 (3d Cir. 2009); *Bodine v. Warwick*, 72 F.3d 393, 400 & n.10 (3d Cir. 1995)("merely because a person has been falsely arrested does not mean that excessive force has been used."). Since excessive force and false arrest inquiries are distinct, demonstrating a lack of probable cause to effect an arrest does not demonstrate an excessive force claim, and vice-versa. *Snell v. City of York*, 564 F. 3d at 400.

29. **Malicious prosecution**. Defendants argue that plaintiff's claim for malicious prosecution brought pursuant to § 1983 must be dismissed because, under Delaware state law, it does not survive Holmes' death. (D.I. 18) Plaintiff counters that the federal and state malicious prosecution claims are separate and distinct causes of action, the former of which is not barred by Delaware's survival statute, 10 Del. C. § 3701. (D.I. 19)

30. Federal law does not provide for "the survival of civil rights actions under § 1983 upon the death of either the plaintiff or the defendant." *Moor v. Alameda County*, 411 U.S. 693, 703 n. 14 (1973). The Supreme Court has concluded that the state survival statutes can fill this gap through 42 U.S.C. § 1988. *Robertson v. Wegmann*, 436 U.S. 584 (1978). Under § 1988, state statutory law provides the principal reference point in determining survival of civil rights actions. *Id.* at 589-90. Delaware's survival statute provides, in pertinent part, "[a]ll causes of action, except actions for defamation, malicious prosecution, or upon penal statutes, shall survive to and against the executors or administrators of the person to, or against, whom the cause of action accrued." *See* 10 Del. C. § 3701.

31. To prevail on a malicious prosecution claim pursuant to § 1983, a plaintiff must show that: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the

11

concept of seizure as a consequence of a legal proceeding."[10] *McKenna v. City of Philadelphia*, 582 F.3d 447, 461 (3d Cir. 2009).

32. While defendants contend that the survival statute clearly applies, the court is unconvinced, and, in the absence of persuasive authority, will not dismiss the claim at this juncture. There remains, however, a problem with the second element of a malicious prosecution claim, "favorable termination." According to the complaint, the "State dropped all charges" against Holmes after Talib-Din recanted his identification. (D.I. 1 at ¶1) The record does not reflect the manner in which the State "dropped" or nolle prossed the charges against Holmes. Under Third Circuit precedent, a nolle prosequi satisfies the favorable termination requirement only if the record indicates the reason for the entry of the nolle prosequi. *DiFronzo v. Chiovero*, 406 Fed. Appx. 605, 608-09 (3d Cir. 2011) (unpublished); *Glover v. City of Wilmington*, 966 F. Supp.2d 417, 426 (D. Del. 2013).

33. **Procedural due process.** The procedural component of the Due Process Clause of the Fourteenth Amendment provides that a state shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV; *Robb v. City of Philadelphia*, 733 F.2d 286, 292 (3d Cir.1984). To establish a

---

[10]In Delaware, a plaintiff must allege the following common law elements: (1) prior institution or continuation of some regular judicial proceedings against plaintiff in this action; (2) such former proceedings must have been by, or at the instance of, the defendant in this action; (3) the former proceedings must have terminated in favor of the plaintiff herein; (4) there must have been malice in instituting the former proceedings; (5) there must have been a lack of probable cause by the institution of the former proceedings; and (6) there must have been injury or damage to plaintiff from the former proceedings." *Wiers v. Barnes*, 925 F. Supp. 1079, 1093 (D. Del. 1996).

12

procedural due process claim under § 1983, a plaintiff must prove: (1) a deprivation of an individual interest encompassed by the Fourteenth Amendment's protection of life, liberty, or property; and (2) that the procedures available did not provide due process of law. *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006).

34. Plaintiff's procedural due process claim is predicated on the allegation that defendants tampered with exculpatory evidence by fabricating "eye witness" identifications. (D.I. 19 at 10) Although plaintiff has not alleged specific facts to support the claim, the court will grant leave to amend to correct this deficiency. *See, e.g., Fletcher–Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116–17 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004). There is no evidence that plaintiff has acted improperly or in bad faith, and plaintiff has not yet amended her pleading. The court concludes that at this early stage, and based on the incomplete record currently before it, plaintiff should be granted leave to amend. *See, e.g., Mallinckrodt Inc. v. E–Z–EM Inc.*, 671 F. Supp.2d 563, 567–68 (D. Del.2009) ("The Third Circuit has adopted a liberal policy favoring the amendment of pleadings to ensure that claims are decided on the merits rather than on technicalities.").

35. **Substantive due process.** Plaintiff avers that Holmes' arrest violated his constitutional rights under the Fourth and Fourteenth Amendments. Defendants move to dismiss this claim, arguing that the "more-specific-provision rule" bars the substantive

13

due process claims. The court agrees.

36. In establishing the "more-specific-provision rule," the Supreme Court has held that "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n. 7 (1997); *Betts v. New Castle Youth Development Center*, 621 F.3d 249, 260 (3d Cir. 2010). Considering that issues related to the arrest of Medford Holmes fit within the purview of the Fourth Amendment, the "more-specific-provision rule" forecloses plaintiff's substantive due process claim.

37. **False Arrest and False Imprisonment.** "To state a claim for false arrest under the Fourth Amendment, a plaintiff must establish: (1) that there was an arrest; and (2) that the arrest was made without probable cause." *James v. City of Wilkes–Barre*, 700 F.3d 675, 680 (3d Cir.2012); *Small v. Herrera*, __ F. Supp. 2d ___, 2014 WL 3374208, at *2 (D. Del. 2014). A claim for false imprisonment arises when a person is arrested without probable cause and is subsequently detained pursuant to that unlawful arrest. *See Adams v. Selhorst*, 449 Fed. Appx. 198, 201 (3d Cir.2011) (per curiam) (unpublished) (citing *Groman v. Township of Manalapan*, 47 F.3d 628, 636 (3d Cir.1995). "False arrest and false imprisonment overlap; the former is a species of the latter." *Wallace v. Kato*, 549 U.S. 384, 388 (2007).

38. In opposition papers, plaintiff states that a grand jury indictment procured by fraud, perjury or other corrupt means vitiates the probable cause required for a lawful arrest and imprisonment. (D.I. 19) According to plaintiff, the State had no physical

14

evidence against Holmes and relied exclusively on the eye witness identifications made by Witness 1 and Talib-Din in presenting the case to the grand jury. These identifications, however, were tainted by defendants' misconduct. Plaintiff postulates that, because Witness 1 did not sign the photo array (after allegedly identifying Holmes) and did not testify at trial, the identification was fatally flawed and false. Moreover, while Talib-Din was initially unable to identify the shooter, he later identified an individual other than Holmes. After detectives threatened to bring charges against him, Talib-Din identified Holmes and testified, accordingly, at trial. Following the trial, Talib-Din recanted the identification, resulting in the charges being dismissed against Holmes.

39. The court finds these allegations insufficient to pass muster under *Twombly*, as plaintiff has not identified which witness(es) perjured themselves or the substance of the alleged perjury before the grand jury. *See Rose v. Bartle*, 871 F.2d 331, 353-354 (3d Cir. 1989). Plaintiff will be afforded an opportunity to amend the complaint in this regard.

42. **Collateral Estoppel.** Defendants contend that collateral estoppel applies to preclude plaintiff's claims for violations of due process, unreasonable search and seizure, false imprisonment, equal protection and malicious prosecution, all grounded in the manner the detectives allegedly handled the photographic lineup they presented to Witness 1. Holmes previously raised the issue that the lineup violated his substantive due process rights, and the Delaware Superior Court already ruled that, while the proximity of the witnesses to each other during the display of the photo array was unnecessarily suggestive, "all other aspects of the identification procedure comport with

15

due process and do not raise a substantial likelihood of irreparable misidentification." *State v. Holmes*, 2012 WL 4086169, at *13. Defendants also assert that Holmes had the opportunity, but did not, present any additional constitutional issues in the underlying criminal case.

41. Under the doctrine of collateral estoppel, once a court has decided an issue of fact necessary to its judgment, that decision may preclude re-litigation of the issue in a suit on a different cause of action involving a party to the first case. *Allen v. McCurry*, 449 U.S. 90, 94 (1980). A defendant in a § 1983 action may assert the collateral estoppel effect of issues decided in state criminal proceedings against the plaintiff. *Looney v. City of Wilmington*, 723 F. Supp. 1025, 1032 (D. Del. 1989). In considering the collateral estoppel effect of a state proceeding, a federal court must apply the law of the state where the criminal proceeding took place and must also "ascertain whether the party against whom the estoppel is asserted had a full and fair opportunity to litigate the issue decided in the state court." *Anela v. City of Wildwood*, 790 F.2d 1063, 1068 (3d Cir. 1986).

42. The Delaware courts apply a four-part test for collateral estoppel analysis. *Taylor v. State*, 402 A. 2d 373, 375 (1979). "Collateral estoppel requires that (1) a question of fact essential to the judgment (2) was litigated (3) and determined (4) by a valid and final judgment." *Looney*, 723 F. Supp. at 1032.[11] Delaware does not require

---

[11]In *Looney*, plaintiff was charged with several Delaware state crimes. Subsequently, plaintiff was convicted of menacing and resisting arrest by the Municipal Court for the City of Wilmington and appealed those convictions to the Delaware Superior Court. The Superior Court dismissed plaintiff's appeal of the menacing conviction due to lack of subject matter jurisdiction for crimes with a fine of $100 or below (menacing), where there is no right to an appeal. *Id.* at 1028. The resisting

16

identity of parties so long as the party against whom collateral estoppel is asserted was a previous party. *Columbia Cas. Co. v. Playtex FP, Inc.*, 584 A.2d 1214, 1217 (1991). The application of the doctrine of collateral estoppel is within the "broad discretion" of the trial court. *Parkland Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 331 (1979).

43. According to the complaint, after the denial of Holmes' motion to suppress, the matter proceeded to trial. The jury was unable to reach a verdict on the charges. While the prosecution was preparing to retry the case, Talib-Din recanted his identification of Holmes as the shooter. "With nothing left, the State dropped all charges" and Holmes was released. (D.I. 1 at ¶ 2) Accordingly, there was no conviction or judgment entered against Holmes. There is nothing of record to evince that Holmes appealed or attempted to appeal the suppression hearing or matters related to the criminal prosecution.[12] In light of the absence of a final judgment, the court concludes that collateral estoppel does not operate to bar review of Holmes' claims related to the photographic line-up.

---

arrest charge, however, proceeded to a jury trial where plaintiff was found not guilty. Plaintiff then brought a § 1983 action against the City and two police officers contending that defendants violated his Fourth and Fourteenth Amendment Rights by conducting an illegal search of his building and using excessive force against his person. *Id.* at 1027. Plaintiff also filed a state law claim for battery. Defendants moved for summary judgment, arguing that the collateral estoppel effect of plaintiff's menacing conviction barred plaintiff from litigating the issue of excessive force, which formed one of the grounds of relief. (*Id.* at 1032) Plaintiff asserted, inter alia, that he did not have a full and fair opportunity to litigate the menacing conviction because the Superior Court dismissed the appeal. The court disagreed, concluding that plaintiff could have attempted to obtain a writ of certiorari from the Delaware Supreme Court, and his failure to do so did not preclude the application of collateral estoppel.

[12]Generally, a criminal defendant cannot appeal a suppression decision until the conclusion of a trial in which there is a finding of guilt.

17

44. To that end, the court is unpersuaded by defendants' contention that Holmes could have petitioned the Supreme Court for certiorari to review the suppression decision. With the exception of *Looney*, the cases relied upon by defendants each had a final judgment of record.[13] The court declines to extend the *Looney* holding to the facts at bar, as there has been no showing that there was any appeal or writ available for Holmes to challenge the suppression decision.

---

[13]In *Allen v. McCurry*, 449 U.S. 90 (1980), prior to the commencement of trial, the Missouri State Court denied plaintiff's motion to suppress evidence. The plaintiff was subsequently convicted, which was later affirmed on appeal. Subsequently, the plaintiff brought a § 1983 action against arresting officers and others claiming, among other things, an allegedly unconstitutional search and seizure. The court granted summary judgment for the defendants, holding that collateral estoppel prevented the plaintiff from re-litigating the search and seizure question already decided against him in the state court. The Court of Appeals reversed and remanded, finding that the § 1983 suit was the plaintiff's only route to a federal forum for his constitutional claims since he could not raise them through federal habeas corpus. The Supreme Court reversed and remanded, ruling that collateral estoppel could apply to § 1983 suits, but did not decide "how the collateral estoppel-doctrine . . . should apply" in that case. In *Brown v. State*, 721 A.2d 1263, 1264-65 (Del. 1998), a federal grand jury returned an indictment charging Brown with several offenses. Prior to trial, he moved to suppress evidence seized pursuant to an illegal search and seizure. The motion was denied and Brown was subsequently convicted and sentenced to 30 years in prison. His conviction and sentence were affirmed on appeal. Brown later filed a petition for return of property in Delaware Superior Court. Following a trial, the Superior Court denied Brown's petition, finding that the State had probable cause to seize the money and that Brown had not rebutted that presumption. The court also found that collateral estoppel prevented Brown from rearguing the illegal search and seizure claims raised during the criminal trial. The Delaware Supreme Court affirmed, finding that "Brown had ample opportunity and motive to assert these claims at the suppression hearing. He was ably represented by counsel and cannot use this Court in a back-door attempt to assert claims that he did not address in the [Delaware] District Court in the first instance." In *Brawley v. State*, 741 A.2d 1025 (1999), Brawley was charged with Delaware State crimes and filed a motion to suppress. The Superior Court denied the motion and, subsequently, Brawley entered a guilty plea to one of the charges; two other charges were nolle prossed. Brawley filed petitions for return of property seized pursuant to an illegal search. The Superior Court denied the petitions, finding that collateral estoppel barred Brawley from questioning the legality of the search ad seizure in a civil action and could not use the civil action to re-litigate the same issues.

18

45. **The City and municipal liability.** A municipality may only be held liable under § 1983 when the "execution of a government's policy or custom . . . inflicts the injury." *Andrews v. City of Philadelphia,* 895 F.2d 1469, 1480 (3d Cir. 1990). A government policy is established by a "decision-maker possessing final authority," and a custom arises from a "course of conduct . . . so permanent and well settled as to virtually constitute law." *Id.* (citing *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658 (1978)). Accordingly, a plaintiff seeking to recover from a municipality must: (1) identify an allegedly unconstitutional policy or custom; (2) demonstrate that the municipality, through its deliberate and culpable conduct, was the "moving force" behind the injury alleged; and (3) demonstrate a direct causal link between the municipal action and the alleged deprivation of federal rights. *Board of County Comm'rs v. Brown,* 520 U.S. 397, 404 (1997). Considering that defendants have not specifically moved to dismiss these claims, the court will not conduct a Fed.R.Civ.P. 12 (b)(6) analysis.

46. **State law claims.** Defendants move to dismiss the state law claims for lack of subject matter jurisdiction. Pursuant to the pendent jurisdiction doctrine, a federal court has the authority to hear a plaintiff's state law claim when the claim emanates from the same common nucleus of operative facts as the federal claim. *U.M.W. v. Gibbs,* 383 U.S. 715, 725 (1966). Considering that not all of the federal claims have been dismissed and plaintiff has been given an opportunity to amend the complaint, dismissal based on the lack of jurisdiction is, at this juncture, denied.

47. **Conclusion.** For the reasons stated, defendants' motion to dismiss is

granted in part and denied in part. An appropriate order shall issue.

_____
United States District Judge